UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
NORFOLK DIVISION

| | |
|---|---|
| GLOBUS MEDICAL INC., <br> 2560 General Armistead Avenue <br> Audubon, PA 19403, <br><br>       Plaintiff, <br><br>   v. <br><br> SHANE JAMISON, <br> 5226 Indian River Road #101 <br> Virginia Beach, VA 23464, <br><br> MIKE RUANE, <br> 1149 York Lane <br> Virginia Beach, VA 23451, <br><br> MIKE JONES, <br> 1880 South Woodside Lane <br> Virginia Beach, VA 23454, <br><br> JAKE SCHOOLS, <br> 1828 Clifton Bridge Drive <br> Virginia Beach, VA 23456, <br><br> SCOTT VAN GILDER, <br> 2595 Landview Circle <br> Virginia Beach, VA 23454 <br><br> SARAH GREGORY, <br> 4025 Church Point Road <br> Virginia Beach, VA 23455, <br><br> NICK WALKER, <br> 4805 Lake Bradford Lane <br> Virginia Beach, VA 23455, <br><br>       Defendants. | Civil Action No. _____ |

## VERIFIED COMPLAINT FOR INJUNCTIVE RELIEF

Globus Medical Inc. ("Globus" or "Plaintiff" or "Company"), by and through its undersigned counsel, hereby brings the following Complaint seeking injunctive relief and monetary damages against Defendants Shane Jamison, Mike Ruane, Mike Jones, Jake Schools, Scott Van Gilder, Sarah Gregory, and Nick Walker (collectively, "Defendants") and avers as follows:

## PRELIMINARY STATEMENT

1. Over the last 15 years, Sky Surgical and its president Jay Jamison (collectively, "Sky") have enjoyed the exclusive (and lucrative) rights to market, sell, and distribute in various geographic areas in Virginia the products of Globus Medical, Inc. ("Globus"), a market leader in developing and manufacturing spinal implant devices. Sky became so successful marketing, selling, and distributing Globus's products that it now has at least 12 sales representatives working for it – including Defendants – all of whom are based in Virginia.

2. To obtain those exclusive distribution rights from Globus, Sky promised Globus—in a binding contract—that during the term of the contractual relationship with Globus and for one year thereafter, Sky would not (1) market, sell, or deliver competitive products of Globus in the same geographic region in which Sky worked for Globus or (2) induce or influence or attempt to induce or influence any of Sky's sales representatives to terminate their relationships with Globus or compete with Globus.

3. Likewise, at the beginning of their respective engagements with Sky, Defendants promised Sky (and, by assignment, Globus)—in binding contracts—that during the term of their relationship with Sky and for one year thereafter, they would not (1) perform

services on behalf of any entity that manufactures, sells, markets, or distributes products or services used in spine surgery other than Globus in any recently assigned territories, (2) solicit any potential purchasers of products or services used in spine surgery on behalf of any company other than Globus in any recently assigned territories, or (3) solicit any employees or representatives of Globus or Globus's distributors to work on behalf of a Globus competitor.

4. Notably, Sky and Globus agreed that, upon termination of the exclusive distribution agreement between Sky and Globus, Sky's rights under its agreements with Defendants would be automatically assigned to Globus.

5. On July 1, 2022, Sky ended its 15-plus-year relationship with Globus and, along with Defendants, are now—and, upon information and belief, even before July 1 *already were*—working with a Globus competitor, SeaSpine, Inc. ("SeaSpine"), to compete with Globus in the spinal implant device market in Virginia and solicit the same customers they called on for Globus.

6. Globus designs, develops, and distributes a broad range of spinal implant technology to assist surgeons in improving the spinal conditions of their patients, from pediatrics to geriatrics.

7. Sky contracted with Globus fifteen years ago to become the exclusive distributor of Globus's products in various areas in and around Virginia. During that long-term relationship, Globus provided substantial training to Defendants; shared confidential and trade secret information about Globus and its products with Defendants; allowed Defendants to take advantage of Globus's customer relationships and goodwill; and provided Defendants with all the necessary tools to become successful. Indeed, Globus supported Defendants as they leveraged Globus's goodwill to entrench themselves with Globus's customers, *i.e.*, the surgeons

and medical centers within their assigned territory. Globus repeatedly renewed its relationship with Sky—such that Defendants continued to partner with Sky and Globus—on several occasions.

8.  Sky and Defendants, however, have not been as loyal. Before the July 1, 2022 expiration of the contractual relationship (which Globus wanted to extend), Sky and Defendants concocted a scheme to begin working with SeaSpine.

9.  To that end, in the weeks leading up to July 1 (and without telling anyone at Globus), Jay Jamison and Sky sales representative Terry McLeod attended SeaSpine's national sales conference with a doctor who Sky previously called upon for Globus.

10. Further, in recent weeks, Sky's sales of Globus products have dropped precipitously, suggesting that Defendants have already begun selling SeaSpine products.

11. Sky and Defendants surely knew that this conduct was in breach of their contractual obligations to Globus, as on the evening of June 29, 2022—two days before the contract with Globus was set to expire—Jay Jamison and several Defendants (including Shane Jamison and Mike Ruane), as well as a number of former Sky sales representatives, logged on to an ultra-encrypted instant messaging service called "Signal," presumably so that they could discuss their plans without creating an evidence trail (Signal allows users to automatically *and **permanently*** delete messages and all metadata associated with the messages):



12. Injunctive relief is necessary and appropriate to protect Globus from immediate and irreparable harm that inevitably will result from Defendants' continued contractual breaches.

13. Globus wrote to Defendants on July 1, 2022 to request that they voluntarily cease their illegal conduct. Counsel for Defendants contacted counsel for Globus by email on July 3, 2022. But in the ensuing exchange of emails between counsel, Defendants' counsel would not even confirm that Defendants would refrain from breaching their obligations until the afternoon of July 5, 2022, so the parties could discuss the matter further.[1] Defendants' counsel's unwillingness or inability to commit to even that limited agreement only amplifies the need for immediate relief. Absent an injunction, Globus will suffer immediate and irreparable harm, including lost customer goodwill and disclosure of confidential information.

---

[1] Given this exchange, Globus's counsel will plan to serve this complaint on Defendants' counsel and alert them as to the date and time of the TRO hearing as soon as the Court sets it.

14. Globus hereby seeks injunctive relief against Defendants to enforce the terms of its agreements with Defendants; halt Defendants' unlawful conduct; and protect its customer goodwill and confidential information.[2]

## JURISDICTION AND VENUE

15. This Court has jurisdiction pursuant to 28 U.S.C. § 1332, as diversity of citizenship exists and the amount in controversy exceeds $75,000.00.

16. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to this civil action occurred in this district.

## THE PARTIES

17. Plaintiff Globus Medical Inc. is a Delaware corporation with its headquarters located at 2560 General Armistead Avenue, Audubon, PA 19403. Its principal place of business is Pennsylvania.

18. Defendant Shane Jamison is an individual and a citizen of the Commonwealth of Virginia. He is a sales representative for Sky and, upon information and belief, currently resides at 5226 Indian River Road #101, Virginia Beach, VA 23464.

19. Defendant Mike Ruane is an individual and a citizen of the Commonwealth of Virginia. He is a sales representative for Sky and, upon information and belief, currently resides at 1149 York Lane, Virginia Beach, VA 23451.

20. Defendant Mike Jones is an individual and a citizen of the Commonwealth of Virginia. He is a sales representative for Sky and, upon information and belief, currently resides at 1880 South Woodside Lane, Virginia Beach, VA 23454.

---

[2] Globus reserves the right to also seek monetary damages for any quantifiable loss that it incurs as a result of Defendants' conduct.

21. Defendant Jake Schools is an individual and a citizen of the Commonwealth of Virginia. He is a sales representative for Sky and, upon information and belief, currently resides at 1828 Clifton Bridge Drive, Virginia Beach, VA 23456.

22. Defendant Scott Van Gilder is an individual and a citizen of the Commonwealth of Virginia. He is a sales representative for Sky and, upon information and belief, currently resides at 2595 Landview Circle, Virginia Beach, VA 23454.

23. Defendant Sarah Gregory is an individual and a citizen of the Commonwealth of Virginia. She is a sales representative for Sky and, upon information and belief, currently resides at 4025 Church Point Road, Virginia Beach, VA 23455.

24. Defendant Nick Walker is an individual and a citizen of the Commonwealth of Virginia. He is a sales representative for Sky and, upon information and belief, currently resides at 4805 Lake Bradford Lane, Virginia Beach, VA 23455.

## FACTUAL ALLEGATIONS

### A. Globus's Protectable Interests

25. Globus, a publicly held company, is driving significant technological advancements across a complete suite of spinal products. Founded in 2003, Globus's single-minded focus on advancing spinal surgery has made it the fastest growing company in the history of orthopedics. Globus is driven to use superior engineering and technology to achieve pain-free, active lives for all patients with spinal disorders.

26. Cultivating customer loyalty and repeat business among medical professionals is critical to Globus's success in a competitive business environment. One of Globus's main business challenges is to develop, maintain, and increase its customer base. Globus aims to foster and secure long-lasting relationships with its customers by encouraging its

employees, agents, and distributors to develop meaningful relationships with existing and prospective customers.

27. To protect its business relationships and its confidential information, Globus requires all of its distributors, as a condition of becoming an exclusive distributor of Globus products, to execute an Exclusive Distributor Agreement ("EDA"), which contains restrictive covenants that apply after the EDA is terminated by the parties. A copy of the Sky EDA, with applicable amendments, is attached hereto as Exhibit A.

28. Likewise, in order to protect its business relationships and confidential information, Globus requires all of its Distributors' employee/agent sales representatives to execute non-compete, non-disclosure, and non-solicitation agreements ("NCNDAs") upon commencing their relationship with Globus, which contain restrictive covenants that apply after the EDA is terminated by the parties. In connection with their distribution of Globus's products for Sky, Defendants all executed NCNDAs, copies of which are attached hereto as Exhibit B through Exhibit H.

**B.   Sky's Relationship with Globus and Defendants' Work on Behalf of Globus**

29. Prior to the termination of Sky's exclusive distribution relationship with Globus on July 1, 2022, Sky was a distributor of medical products manufactured by Globus and, as a result, Defendants serviced Globus's surgeon- and hospital-customers and medical centers within the territory exclusive to Sky.

30. Indeed, Defendants would often have daily interactions with surgeons, medical facilities, and other potential Globus customers, developing sales leads for the benefit of Globus, gaining and consistently increasing product knowledge through formal sales training, attending surgeries and Operating Room visits, and conducting industry research.

31. Solely through their relationship with Globus, Defendants gained knowledge regarding the specific needs and wants of Globus's customers, the pricing of Globus's products and services, Globus's costs, and the profit margins Globus earns on certain products and service—knowledge, which if misused, could seriously and irreparably harm Globus.

32. Specifically, by way of example, Defendants have knowledge about Globus's proprietary ExcelsiusGPS robotic technology, which provides Globus a competitive advantage in the industry. In other words, if this technology were to fall into the hands of a competitor – such as SeaSpine – it would be disastrous for Globus.

33. Furthermore, by virtue of their relationships with Sky and Globus, Defendants have confidential information related to all of Sky's customers in all of Sky's territories, not just the territories to which they were assigned. In addition, Jay Jamison – and, by extension, Defendants – may have very sensitive information regarding the profit margins Globus earns on certain products and services, which could also irreparably harm Globus if misused.

34. Just like every other distributor, Globus required Sky to sign an Exclusive Distributor Agreement ("EDA") at the inception of the relationship, protecting, *inter alia*, Globus's vital customer relationships and goodwill.

35. The EDA was initially executed in September 2007 and was extended on several occasions, most recently until July 1, 2022.

36. In exchange for the right to serve as Globus's exclusive distributor in substantial territories in Virginia, Sky agreed to several important contractual covenants with Globus. Simply stated, Sky primarily agreed to refrain from competing against Globus in the

spinal implant business, interfering with Globus's customer relationships, accepting compensation from a Globus competitor, and/or soliciting Globus employees, both during the term of the EDA and for one year after the termination of the EDA. *See generally* Ex. A at § 5.

37. As a critical piece of those contractual commitments, Sky also agreed that it would require each Sky "employee, agent, or sales representative who participates in the sale or promotion of [Globus's products] to execute a No Competition and Non-Disclosure Agreement"—*i.e.*, the earlier referenced NCNDAs—in a format agreed upon by Sky and Globus, and which would be assignable to Globus under certain circumstances. Ex. A § 5.5.

38. Sky and Globus specifically agreed, as relevant here, that upon the termination of the EDA between Sky and Globus, Sky's "benefits under and rights to enforce the NCND Agreements with any of [Sky's] Principals, employees, agents, and/or sales representatives who participate(d) in the sale" of Globus's products in the relevant region "shall automatically be assigned to [Globus], without the need for any further document to be executed," with the "the assignment to be self-effectuating as of … termination or expiration of this EDA." Ex. A § 5.5.2 (Second Amendment). In other words, Sky and Globus expressly agreed that upon the termination of the EDA between Sky and Globus, all of Sky's rights and benefits under the NCNDAs would be automatically assigned to Globus.

39. The NCNDAs themselves reinforced the relationship-wide protections that Globus negotiated with Sky through the EDA, on an individual level with the Sky employees, agents, and sales representatives that would be involved with marketing, selling, and distributing Globus's products through and on behalf of Sky.

40. In the NCNDAs, Defendants acknowledged that Sky was engaged in "the sale of products and services for spine surgery . . ., including the exclusive sales and distribution

of products . . . for Globus Medical, Inc. within a defined geographic territory." *See, e.g.*, Ex. B, Shane Jamison's December 1, 2007 NCNDA at Acknowledgments, ¶ A.[3]

41. Defendants also acknowledged that they would "have access to confidential, proprietary and trade secret information ('Confidential Information') belonging to the Company and/or to Globus"; that "the disclosure of such Confidential Information to unauthorized third partis, including Competitive Companies (as defined below would cause great and irreparable harm to the Company and/or Globus"; and that "both the Company and Globus have legitimate business interests in the protection of the Confidential Information." *See, e.g.*, Ex. B at Acknowledgments, ¶ I.

42. Defendants agreed that during the term of their relationship with Sky and for one year thereafter they would not perform services on behalf of any entity that manufactures, sells, markets, or distributes products or services used in spine surgery other than Globus in any recently assigned territories. *See, e.g.*, Ex. B at §§ 1.1-1.3.

43. Defendants further agreed that during the term of their relationship with Sky and for one year thereafter they would not solicit any potential purchasers of products or services used in spine surgery on behalf of any company other than Globus in any recently assigned territories. *See, e.g.*, Ex. B at §§ 1.1-1.3.

44. Defendants also agreed that during the term of their relationship with Sky and for one year thereafter they would not solicit any employees or representatives of Globus or Globus's distributors to work on behalf of a Globus competitor. *See, e.g.*, Ex. B at § 1.4.

---

[3] Although the exact language of the NCNDAs varies somewhat, there are no material, substantive differences between the cited provisions for pertinent purposes and, as such, Globus will cite to Shane Jamison's December 1, 2007 NCNDA as a representative example throughout in the interest of uniformity and efficiency.

11

45. Defendants additionally agreed "not to accept or receive compensation of any kind from any company engaged in the manufacture, sale, marketing or distribution of spinal implants" during their relationship with Sky or one year thereafter. *See, e.g.*, Ex. B at ¶ 1.3.

46. Defendants additionally agreed that they would not disclose Globus's confidential information except in the course of their work for Globus. *See, e.g.*, Ex. B at § 2.1.

47. Defendants further acknowledged and agreed that a breach of the NCNDAs agreement would cause Globus irreparable harm and entitle Globus to immediate injunctive relief, as well as attorney's fees and costs associated with enforcing the NCNDAs. *See, e.g.*, Ex. B at § 3.1 (acknowledging that "violation of any of the provisions of this NCND Agreement will cause irreparable injury for which money damages are neither adequate nor ascertainable . . . Globus shall have the right to have the provisions of this NCND Agreement specifically enforced by a court of competent jurisdiction . . . and Agent hereby consents to the entry of an injunction or other similar relief without the necessity of posting a bond or other financial insurance . . . Company shall be entitled to recover its costs and expenses (including reasonable attorney's fees) incurred in enforcing its rights under this NCND Agreement").

48. Defendants also acknowledged and agreed that Sky's rights under the NCNDAs may be assigned to Globus under certain circumstances, and that, "[i]f such assignment occurs, [Sky] and [Defendants] acknowledge that Globus shall enjoy all the rights and benefits of [Sky] under this NCND Agreement." *See, e.g.*, Ex. B at § 3.2.

49. The NCNDAs state that they "shall be governed by, construed and enforced in accordance with the laws of the Commonwealth of Pennsylvania, without regard to the principles thereof regarding conflicts of laws." *See, e.g.*, Ex. B at § 4.4.

### C. The End of Sky's Relationship with Globus and the Illegal Conduct of Defendants

50. The EDA expired on July 1, 2022, despite Globus's efforts to extend the relationship further.

51. While Globus wanted Sky to continue as the exclusive distributor of its products in the territory covered by the EDA, Jay Jamison informed Globus on June 29, 2022 of his decision to allow the EDA between Globus and Sky to expire on July 1, 2022.

52. Before the expiration of the EDA, upon information and belief, Sky and SeaSpine began communicating about entering into a contractual relationship, whereby Sky (or some other entity affiliated with Jay Jamison) and Defendants would market, sell, and distribute SeaSpine's products to customers in Virginia, including those that Sky serviced on Globus's behalf.

53. SeaSpine is a direct competitor of Globus, as it is a "spin off of a spinal implants and orthobiologics division that manufactures and sells spinal implant products" and "aims to be a market leader in spine." *See* https://www.seaspine.com/about.

54. Although it is not currently known when Sky, Defendants, and SeaSpine began their conversations about breaching the EDA/NCNDAs, Jay Jamison and a number of Defendants (including Shane Jamison and Mike Ruane) joined the ultra-encrypted instant messaging service Signal at the exact same time on the evening of June 29, 2022 (*i.e.*, just two days before the expiration of the EDA), presumably to covertly discuss their plans to work with SeaSpine in violation of their various contractual obligations.

55. Signal is a communication application intended to provide secrecy for its users: its messages are encrypted and are destroyed, along with their metadata, after a certain period of time, allowing users to permanently hide the content of their messages and/or that they

even sent them.  *See* **Signal**, https://signal.org/ (last visited July 2, 2022) ("We can't read your messages or listen to your calls, and no one else can either"); **Signal**, *Embrace ephemerality with default disappearing messages* (Aug. 10, 2021), https://signal.org/blog/disappearing-by-default/.

56. Furthermore, Globus has come to learn that Jay Jamison and Sky sales representative Terry McLeod attended SeaSpine's National Sales Meeting before the termination of the EDA in June 2022 with at least one Globus customer (a spine surgeon) in attendance with them.  In fact, Jay Jamison admitted to Globus's Vice President of Sales, Justin Hyde ("Hyde"), that he attended the meeting, but would neither confirm nor deny with whom he attended.

57. Globus further understands that SeaSpine has offered employment or agency agreements to Defendants and, upon information and belief, that certain of Defendants have already accepted and/or intend to accept such offers.

58. Additionally, Sky's business with Globus has significantly decreased in just the past few weeks: in fact, Sky barely had any Globus cases with surgeons on the schedule, suggesting that Defendants had already begun distributing and/or selling competitive products to Globus's customers.

59. By way of example, Globus has learned that Sky had seven surgeries scheduled for June 21 and 22, 2022 in which Globus products were set to be used, but that five of those seven surgeries were cancelled.  It is extremely unusual for five out of seven surgeries to be cancelled (typically, well less than 25% of scheduled surgeries get cancelled), which suggests to Globus that the surgeons performing these surgeries did in fact perform these surgeries but did so using products from Globus's competitors that were supplied by Sky and Defendants.

60. Upon information and belief, Sky and Defendants have been having the surgeons to whom they are selling SeaSpine products sign non-disclosure agreements regarding that activity.

61. On June 30, 2022, Hyde sent an email to all of Sky's sales representatives (including Defendants), offering them employment with Globus upon the expiration of the EDA, and asking for a decision by the end of the day. No one responded to that email. After Hyde followed up, only two of Sky's sales representatives confirmed they will accept employment with Globus.

62. While the extent of the scheme by Sky and Defendants to unlawfully compete with Globus remains unknown, Globus expects to obtain additional details of their operation through expedited discovery.

63. With each day that passes in which Defendants are permitted to continue this conduct, Globus stands to suffer an irreparable loss of the valuable customer goodwill and relationships that it spent years helping Sky and Defendants build, as well as the training, resources, and knowledge that it provided to Defendants.

64. Similarly, Globus's confidential and proprietary business information is also at risk, as Defendants will undoubtedly try to leverage the knowledge and relationships provided to them by Globus in their roles with SeaSpine.

# COUNT I
# BREACH OF CONTRACT
## (AGAINST ALL DEFENDANTS)

65. All preceding paragraphs are incorporated by reference as if fully set forth herein.

66. Sky and Defendants entered into the NCNDAs and Sky's interests under those agreements were automatically assigned to Globus by the terms of the EDA upon its termination.

67. The NCNDAs are valid and enforceable as written because they meet Pennsylvania state contract law requirements, reasonably protect and advance Globus's legitimate business interests, and the balance of the equities favors their enforcement.

68. The NCNDAs prohibit Defendants from performing services on behalf of any entity that manufactures, sells, markets, or distributes products or services used in spine surgery other than Globus in any of their recently assigned territories during the term of their relationship with Sky and for one year thereafter.

69. Upon information and belief, Defendants have breached the NCNDAs by contracting with SeaSpine to sell spinal implant products within the geographic territories proscribed by the NCNDAs and within the time period proscribed by the NCNDAs, among potentially other ways.

70. As a direct and proximate result of Defendants' breach of the NCNDAs, Globus has suffered immediate and irreparable harm and will continue to suffer irreparable harm unless Defendants are enjoined.

## COUNT II
## <u>UNJUST ENRICHMENT (IN THE ALTERNATIVE)</u>
## (AGAINST ALL DEFENDANTS)

71. All preceding paragraphs are incorporated by reference as if set forth fully herein.

72. This Count is brought only in the alternative and in the event that the Court for whatever reason decides (which it should not) that the NCNDAs are unenforceable.

73. Globus conferred a benefit on Defendants in the form of customer relationships and confidential business information, as well as any revenue generated by their association with SeaSpine, which was brought about only because of such relationships and information.

74. Globus also conferred benefits on Defendants such as training, confidential information, infrastructure, and resources.

75. Defendants received and appreciated such benefits provided by Globus.

76. Globus has not been compensated for the conferral of such benefits.

77. In fact, Globus has been harmed by conferring such benefits.

78. Defendants' retention of such benefits without payment of value would be inequitable.

## <u>PRAYER FOR RELIEF</u>

WHEREFORE, Globus requests the following relief:

(a) Defendants be enjoined, preliminarily until hearing, and thereafter permanently, from breaching their obligations in the NCNDAs;

(b) Defendants be enjoined, preliminarily until hearing, and thereafter until the expiration of their non-competition and non-solicitation obligations, from competing with

Globus in any capacity in the geographic region in which they worked for Globus as proscribed by the NCNDAs and from soliciting any agents of Globus as proscribed by the NCNDAs;

    (c) Defendants be enjoined, preliminarily until hearing, and thereafter permanently, from using or retaining any of Globus' trade secrets, proprietary information, or confidential information;

    (d) Defendants be directed to immediately return to Globus all Globus property (including but not limited to Globus's products and Globus's customer information, pricing information, and product development information), as well as all copies of Globus's documents, electronic files, and information;

    (e) Globus be awarded reasonable attorneys' fees and costs, including, but not limited to, all costs of the investigation into Defendants' unlawful actions; and

    (f) Globus be awarded such other and further necessary and proper relief as the Court may deem just and proper.

Dated: July 7, 2022         Respectfully submitted,

                 /s/ Matthew J. Sharbaugh

Matthew J. Sharbaugh (VA Bar No. 91219)
MORGAN, LEWIS & BOCKIUS LLP
1111 Pennsylvania Ave. NW
Washington, D.C. 20004
Tel: 202-739-5623
Fax: 202-739-3001
matthew.sharbaugh@morganlewis.com

Sarah E. Bouchard***
Benjamin K. Jacobs***
Brett A. Janich***
MORGAN, LEWIS & BOCKIUS LLP
1701 Market Street
Philadelphia, PA 19103
Tel:  215-963-5000
Fax: 215-963-5001
sarah.bouchard@morganlewis.com
benjamin.jacobs@morganlewis.com
brett.janich@morganlewis.com

*Attorneys for Plaintiff*
*Globus Medical Inc.*

***Motions for *Pro Hac Vice* Admission Forthcoming

## VERIFICATION

I, Justin Hyde, hereby verify under penalty of perjury that I am the Vice President of Sales for Globus Medical, Inc. I further verify that the factual information as set forth in Plaintiff Globus Medical, Inc.'s Verified Complaint for Injunctive Relief is true and correct to the best of my knowledge, information and belief.

Dated: July 6, 2022

*Justin Hyde*
Justin Hyde