UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Norfolk Division

| | |
|---|---|
| GLOBUS MEDICAL, INC., ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 2:22cv282 |
| ) | |
| SHANE JAMISON, et al., ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM OPINION AND ORDER

Before the Court is Defendants Shane Jamison, Mike Ruane, Mike Jones, Jake Schools, Scott Van Gilder, Sarah Gregory, Nick Walker, Curt McLeod, Terry McLeod, Scott Brooks, and Kurt Reighard's ("Defendants," collectively) Motion to Exclude the Expert Report and Testimony of Misty L. Decker ("Motion to Exclude") and accompanying memorandum in support. ECF Nos. 192, 193. Therein, Defendants seek to exclude Plaintiff Globus Medical, Inc.'s ("Globus") damages expert Misty L. Decker from testifying at trial pursuant to Federal Rule of Civil Procedure 7 and Federal Rule of Evidence 702. ECF No 192 at 1. The instant Motion argues that Decker's report and testimony should be excluded because her "opinions have not been reliably applied to these facts because her analysis calculates damages sustained by the wrong entity; her analysis fails to attribute damages to individual defendants; and she fails to analyze lost sales where sales actually occurred." *Id.* at 2. Additionally, Defendants argue that "[b]ecause Decker fails to establish a causal link between the alleged harm to Plaintiff and Defendants' actions, her report lacks a reliab[le] methodology and is not relevant." *Id.*

Globus filed a Memorandum in Opposition, ECF No. 220, and Defendants replied. ECF No. 222. The undersigned makes this ruling without a hearing pursuant to Federal Rule of Civil

Procedure 78(b) and Eastern District of Virginia Local Civil Rule 7(J). Accordingly, the matter is now ripe for disposition. For the reasons explained below, Defendants' Motion to Exclude is **DENIED**.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Globus filed its Third Amended Complaint against Defendants, Fusion Therapeutics, LLC, and Jonathan Walesczyk on December 18, 2023. ECF No 152. The Third Amended Complaint identifies Jamison, Ruane, Jones, Schools, Van Gilder, Gregory, Walker, Curt McLeod, Terry McLeod and Brooks as the "Sales Rep Defendants." ECF No. 152 at 2. Each of the Sales Rep Defendants were formerly employed by Sky Surgical ("Sky"), a corporation that retained the exclusive rights to "market, sell, and distribute Globus's spine surgery products" in a defined sales territory that spanned Southeastern Virginia through an "exclusive distributor agreement" ("EDA") with Globus. ECF No. 152 at ¶¶ 1, 42. The Sales Rep Defendants signed non-competition, non-disclosure, and non-solicitation agreements ("NCNDAs") before they began selling Globus products in the region. *Id.* at ¶ 3. Globus alleges that the Sales Rep Defendants coordinated with Reighard and others to breach these agreements and sell products manufactured by Globus's competitors to doctors and hospitals in the territory where the Sales Rep Defendants previously sold Globus products. *Id.* at ¶¶ 1-19.

Among other claims against additional defendants, Globus's Third Amended Complaint alleges Breach of Contract against the Sales Rep Defendants, Unjust Enrichment (in the alternative) against the Sales Rep Defendants, Tortious Interference with Contractual Relationship against Curt McLeod, Terry McLeod, Scott Brooks, Mike Jones, Mike Ruane, Nick Walker, Sarah Gregory, Scott Van Gilder, Jake Schools, Shane Jamison, and Kurt Reighard, and Breach of Duty of Loyalty and Usurpation of Corporate Opportunities against Curt McLeod, Terry McLeod, Scott

2

Brooks, Mike Jones, Mike Ruane, Nick Walker, Sarah Gregory, Scott Van Gilder, Jake Schools, and Shane Jamison. ECF No. 152 at ¶¶ 171-207.

Globus retained Certified Public Accountant Misty L. Decker to opine on Globus's damages related to the allegations in the Third Amended Complaint. ECF No 194 at 4. Globus asked Decker "to assume liability but express no opinions on such." *Id.* at 4. Decker calculated Globus's lost sales that Globus alleges resulted from Defendants' wrongful conduct. *Id.* at 13–14. Decker's report quantifies Globus's lost sales by facility. *See, e.g., id.* at 42 (calculating the Globus's lost sales for the Chesapeake Regional Medical Center).

Defendants filed the instant Motion to Exclude on October 3, 2024. ECF No. 192. Globus filed a Memorandum in Opposition on October 14, 2024. ECF No. 220. Defendants filed a reply on October 17, 2024. ECF No. 222.

## II. LEGAL STANDARD

Rule 26(a)(2)(B) of the Federal Rules of Civil Procedure provides in pertinent part that a retained expert must disclose "(i) a complete statement of all opinions the witness will express and the basis and reasons for them;" and "(ii) the facts or data considered by the witness in forming them."

Rule 702 of the Federal Rules of Evidence permits admission of "scientific, technical or other specialized knowledge" by a qualified expert if it will "help the trier of fact to understand the evidence or to determine a fact in issue," "the testimony is based on sufficient facts or data," "is the product of reliable principles and methods," and "the expert's opinion reflects a reliable application of the principles and methods to the facts of the case." Fed. R. Evid. 702 ("Rule 702"); *see also United States v. Wilson*, 484 F.3d 267, 274–75 (4th Cir. 2007). The Court must ensure that an expert's opinion is based on "*knowledge* and not on belief or speculation." *Sardis v.*

3

*Overhead Door Corp.*, 10 F.4th 268, 281 (4th Cir. 2021) (emphasis in original) (quoting *Oglesby v. Gen. Motors Corp.*, 190 F.3d 244, 250 (4th Cir. 1999)). Expert testimony may be admitted pursuant to Rule 702 if the testimony is both relevant and reliable, considering a number of factors including whether the theory or technique "can be (and has been) tested," whether it "has been subjected to peer review and publication," whether it has been "generally accept[ed]" in the "relevant scientific community," and "the known or potential rate of error." *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 589, 593–94 (1993).[1] The evaluation of these factors "can 'depend[] on the nature of the issue, the expert's particular expertise, and the subject of his testimony.'" *Sardis*, 10 F.4th at 281 (quoting *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 150 (1999)). "Accordingly, trial courts are typically given 'broad latitude' to determine which of these factors (or some other unspecified factors) are 'reasonable measures of reliability in a particular case.'" *Id.* (citation omitted).

*Daubert*'s relevance requirement "assures that the expert's proposed testimony will 'assist the trier of fact to understand the evidence or to determine a fact in issue' as required by Fed. R. Evid. 702." *Garlinger v. Hardee's Food Sys., Inc.*, 16 Fed. App'x. 232, 235 (4th Cir. 2001) (per curiam); *Daubert* 509 U.S. at 591 ("This condition goes primarily to relevance.").

Although the admissibility of expert testimony is "flexible," the district court must function as a gatekeeper, permitting only expert testimony that comports with Rule 702's guidelines as explained in *Daubert*. 509 U.S. at 594. In doing so, the Court has an obligation to "ensure that an

---

[1] Defendants briefly contend that "adjusting for errors in the Decker Report's calculations reduces the damages amounts proffered therein by $19,662,761, which is an error rate of 84%." ECF No 193 at 29 (citing ECF No. 194, attach. 1 at ¶ 9). However, the error rate mentioned in *Daubert* refers to the accepted rate of error of a certain technique, not the difference between one expert's calculation and another's adjusted calculation. *See Daubert*, 509 U.S. 579, 594 (1993) ("[I]n the case of a particular scientific technique, the court ordinarily should consider the known or potential rate of error . . . and the existence and maintenance of standards controlling the technique's operation . . .") (citations omitted)

4

expert's testimony both rests on a *reliable* foundation and is *relevant* to the task at hand." *Sardis*, 10 F.4th at 281 (emphasis in original) (quoting *Nease v. Ford Motor Co.*, 848 F.3d 219, 229–30 (4th Cir. 2017)). "Simply put, if an opinion is not relevant to a fact at issue, *Daubert* requires that it be excluded." *Id.* Despite the Court's "broad discretion" to determine which factors are "reasonable measures of reliability in a particular case," the determination of an expert's reliability is not an issue that can be delegated to a jury. *Id.* (quoting *Nease*, 848 F.3d at 229).

As emphasized by the Fourth Circuit, in cases where expert testimony is challenged on relevance and/or reliability grounds, the district court's gatekeeping function is "indispensable" and "cannot be overstated." *Id.* at 283–84. However, "the trial court's role as gatekeeper is not intended to serve as a replacement for the adversary system, and consequently, the rejection of expert testimony is the exception rather than the rule." *In re Lipitor (Atorvastatin Calcium) Mktg., Sales Pracs. & Prods. Liab. Litig.*, 892 F.3d 624, 631 (4th Cir. 2018) (quoting *United States v. Stanley*, 533 F. App'x 325, 327 (4th Cir. 2013) (per curium) (unpublished)). "Indeed, *Daubert* itself stressed the importance of the 'conventional devices' of '[v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof' (rather than wholesale exclusion by the trial judge) as 'the traditional and appropriate means of attacking shaky but admissible evidence.'" *Id.* (quoting *Daubert*, 509 U.S. at 596).

### III. ANALYSIS

Defendants structure their Motion to Exclude around the two primary requirements for expert testimony to be admissible: reliability and relevance. *Sardis*, 10 F.4th at 281; ECF No. 193 at 14. In the instant Motion, Defendants argue that Decker's testimony fails to reliably apply its principles and methods to the facts of the case and is irrelevant for four reasons. First, they argue that Decker should not have calculated Globus's damages because Globus was merely an assignee

of the NCNDAs signed by the Sales Rep Defendants. ECF No. 193 at 15. Next, they argue that her testimony fails to attribute damages to individual defendants and is therefore unhelpful to the jury. *Id.* at 17–18. Third, they argue that Decker's testimony should be excluded because it analyzes Globus's damages by facility, not by surgeon, and is therefore unreliable and unhelpful. *Id.* at 19–20. Fourth and finally, Defendants argue that Decker's report and testimony is irrelevant because it fails to sufficiently establish a causal link between Defendants' alleged conduct and Globus's lost profits. *Id.* at 20–23.

Globus contends that it is a third-party beneficiary of the NCNDAs, and therefore Decker calculated damages for the correct entity. ECF No. 220 at 12. It asserts that Decker's analysis of cumulative damages is not a basis for exclusion because she was not required to apportion damages between defendants and the jury may still use her findings to apportion damages. *Id.* at 15–17. Globus argues that Decker's choice to calculate damages at the facility level does not render Decker's report "speculative" or "unreliable," and that the facility data is relevant because the NCNDAs prohibited the Sales Rep Defendants from "engaging in competitive activities with hospitals." *Id.* at 17–18. Finally, Globus argues that although Decker was not required to establish causation in her report and testimony, a sufficient causal link exists between her calculated damages and Defendants' alleged wrongful acts. *Id.* at 18-23.

Defendants contend that their first three arguments relate to the reliability Decker's testimony and its application to the facts of the case. *See* ECF No. 193 at 14; ECF No 222 at 8 ("The Court should exclude the Decker Report because its opinions do not reflect a reliable application of its principles and methods to the facts of the case."). However, the arguments appear to focus more on how Decker's conclusions will assist the jury rather than the scientific reliability of the methods she used in developing her testimony. Defendants claim that Decker's calculation

6

of a "total damages figure" provides "no way for the jury to discern what specific damages in specific amounts should be awarded against individual defendants." ECF No. 193 at 18. They also argue that "[t]he Decker Report's failure to perform its calculations at the surgeon level is a fundamental flaw and would not aid the trier of fact in assessing the effect of the alleged anticompetitive activity." ECF No. 193 at 20. Defendants' arguments are less concerned about Decker's process in reaching her conclusions and are instead primarily focused on how those conclusions will aid the jury in apportioning damages between the several defendants, or how the data Decker used in her analysis impacts her ultimate conclusions. *See* ECF No. 222 at 9 ("A jury could spend days on end reviewing the Decker Report and its exhibits, and it would never be able to determine what damages are attributable to each specific defendant . . .").

The "*Daubert* hallmarks of reliability" are "testing, peer review, literature, rate of error, [and] general acceptance." *Sardis*, 10 F.4th at 295. Globus retained Decker to "evaluate and render opinions regarding the economic remedies due Globus, if any, related to the allegations in this matter." ECF No 194 at 4. Globus asked Decker to "assume liability but express no opinions on such." *Id.* Decker used the "yardstick" and "before-and-after" methods to calculate Globus's lost profits. *Id.* at 17-22. Both have been recognized as reliable methods for calculating damages, specifically lost profits. *See Lehrman v. Gulf Oil Corp.*, 500 F.2d 659, 667 (5th Cir. 1974) ("There are two generally recognized methods of proving lost profits: (1) the before and after theory; and (2) the yardstick test."); *Simo v. Mitsubishi Motors N. Am., Inc.*, 245 Fed. App'x 295, 300-301 (4th Cir. 2007) (affirming the district court's conclusion that an expert's use of the yardstick method to calculate a range of averages to present a loss of future earnings was reliable after noting that South Carolina law did not require damages to be proven with absolute certainty); *Architectural Ingenieria Siglo XXI, LLC v. Dominican Republic*, No. 20-14058, 2023 WL 8946765, at *10 (11th

Cir. Dec. 28, 2023) (Recognizing, in ruling on the appeal of a breach-of-contract claim, that the before-and-after theory and the yardstick test are the two generally recognized methods of proving lost profits).

Defendants do not challenge the analytical processes that Decker used to calculate Globus's lost sales and profits. Instead, their arguments primarily focus on how useful Decker's testimony will be to the jury. *Daubert*'s relevance requirement has to do with the connection between the expert's conclusion and the fact at issue and focuses on whether the testimony will genuinely assist the trier of fact. *See Sardis*, 10 F.4th at 281; *see Webb v. Kazlauskas*, No. 3:21cv439, 2022 WL 762097, at *1 (E.D. Va. Feb. 22, 2022) ("The "fit" requirement (an aspect of Rule 702's relevance standard) necessitates that an expert's testimony is sufficiently tied to the facts of the case that it will aid the jury in resolving a factual dispute.") (quoting *Daubert*, 509 U.S. at 591) (internal quotation marks omitted).

Defendants attempt to challenge Decker's methodology in using facility-level data instead of individual surgeon-level data in her calculation of damages. *See* ECF No 222 at 14. However, their concern is not with the technical methods Decker used in calculating damages, but instead the fact that "data that does not account for purchases made at the surgeon level cannot reliably establish lost profit damages because they are not tied to the facts of the case." ECF No. 222 at 14. This argument comes closer to the question of "fit" between testimony and facts of the case than it does to challenging Decker's methodology. *Daubert*, 509 U.S. at 591. It relates to the factual input of Decker's analysis, not the inherent reliability or accuracy of the methods she used to reach her conclusions.

Therefore, these arguments are better categorized as relevancy arguments alongside Defendant's final contention, that Decker's testimony is irrelevant because it fails to sufficiently

link Defendant's alleged wrongdoing to the damages Globus suffered. ECF No. 193 at 20. The Court will analyze each argument in turn.

### 1. Whether Globus is an assignee or a third-party beneficiary to the NCNDAs is a legal question to be determined on the merits by the District Judge.

Defendants claim that Decker's testimony should be excluded because, in quantifying the damages caused by Defendants' breach of their NCNDAs, she calculated Globus's damages, not those suffered by Sky. ECF No. 193 at 16. They argue that "any damages Globus could allege would be those suffered by Sky Surgical in this timeframe because Globus is merely the assignee of Sky Surgical's rights" created by the NCNDAs. *Id.* In response, Globus first claims that this is a legal argument and not "a valid challenge to the relevancy or reliability of the Decker report." ECF No. 220 at 12. Globus also argues that it is a third-party beneficiary to the NCNDAs and may therefore recover from the Defendants who breached those agreements. *Id.* at 13–14. In their reply, the Defendants claim that Globus failed to raise its third-party-beneficiary argument in any of its previous complaints, rendering that argument untimely now. ECF No. 222 at 16.

In ruling on Defendants' Motion to Exclude, the Court considers only whether the expert testimony at issue is reliable and relevant. *Sardis*, 10 F.4th at 281. "Reliability is a 'flexible inquiry' that focuses on 'the principles and methodology' employed by the expert." *Id.* (quoting *Daubert*, 509 U.S. at 594-95). "An expert's opinion is relevant if it has 'a valid scientific connection to the pertinent inquiry.'" *Id.* (quoting *Belville v. Ford Motor Co.*, 919 F.3d 224, 232 (4th Cir. 2019)).

At this stage of litigation, Globus's contractual status is an undecided issue that does not affect the reliability or relevance of Decker's testimony and is outside the scope of the Court's

9

analysis of the instant motion.[2] Whether Globus is an assignee or a third-party beneficiary is a legal question to be resolved by the District Judge on the merits. *See U.S. McKenney's, Inc. v. Leebcor Services, LLC*, No. 4:20cv179, 2022 WL 3337795, at *3 (E.D. Va. Feb. 18, 2022) (finding that expert testimony that calculated actual damages even when the contract contained a liquidated damages provision was reliable) ("The liquidated damages question is a legal issue for the District Judge to resolve on the merits, and which, while potentially rendering Aegis's opinion irrelevant if decided in McKenney's favor, is premature to address here."). A future decision in favor of Defendants could potentially render Decker's testimony irrelevant. But it is premature to address that legal issue at this stage, and therefore it does not require the exclusion of Decker's testimony.

   2. *Decker's decision not to attribute damages to individual defendants does not require the exclusion of her report and testimony.*

Defendants argue that Decker's testimony should be excluded because it "fails to tie its damage analysis to the separate facts and separate claims relating to each of the Defendants." ECF No. 193 at 18. Defendants claim that Decker is required, as an expert opining on lost profits, to apportion the allegedly lost profits between the Defendants, and cites the apportionment requirement in patent litigation as an example. *Id* at 17; *Federal Rembrandt Soc. Media, LP v. Facebook, Inc.*, 22 F. Supp. 3d 585, 594 (E.D. Va. 2013) (Discussing the apportionment requirement for calculating damages specific to patent litigation). They argue that Decker's failure to apportion damages leaves the jury to make "raw guesses to apportion liability among some or all of the Defendants." ECF No. 193 at 19. Globus contends that lost profit experts, unlike patent experts, are not required to apportion damages, and that the jury can use Decker's report to assign individual liability. ECF No. 220 at 16–17.

---

[2] Several Defendants argue that Globus's breach-of-contract damages should be limited because Globus is only an assignee to the NCNDAs in their Motions for Summary Judgment. *See* ECF No. 203 at 20; ECF No. 213 at 22.

10

The apportionment required of patent litigation damages experts does not apply here, but Defendants are correct to note that a general damages calculation and lost profits presented at the facility level may be unhelpful to the jury in apportioning damages between Defendants with respect to the breach of contract claims based on their individual breaches of their individual NCNDAs. *See Pharmanetics, Inc. v. Aventis Pharms., Inc.*, 182 F. App'x 267, 271 (4th Cir. 2006) (per curium) (unpublished) ("A lump sum, indiscriminately attributed to Appellee, was not sufficiently tied to the facts when the evidence showed various factors caused lost sales. Implicitly, the jury had no reasonable method to dissect the report and assess what acts may have caused particular losses."). This is especially significant, as Defendants note, considering that Globus cannot pursue joint and several liability for its breach of contract action. *See* ECF No. 222 at 6 n.3.

However, this argument does not address the fact that Globus alleges that Defendants *acted together* to harm Globus's business interests in Counts III and V of the Third Amended Complaint, which assert tort-based causes of action. ECF No 152 at ¶¶ 188–199, 205–207. The Third Amended Complaint is replete with descriptions of how sales representatives collaborated in their allegedly tortious activities.[3] "[D]espite their knowledge of each other's NCNDAs, the Sales Rep Defendants have interfered with each other's contractual obligations to Globus, including, but not limited to, by assisting one another indirectly in the promotion, distribution, and

---

[3] Defendants argue that *R.F.M.A.S., Inc, v. So* is relevant to this case because in *R.F.M.A.S.*, the court noted that "even if the testimony of plaintiff's putative damages expert were admissible, it would be of limited utility" because it did not "distinguish between the liability" of two separate groups of defendants "or separate the harms flowing from each assumed legal violation." 748 F. Supp. 2d 244, 267 (S.D.N.Y. 2010); ECF 222 at 11-12. However, the court ultimately excluded the experts' testimony because the experts were not qualified to testify on the subject matter, their testimony relied on insufficient data, and their methodologies were unreliable. *Id.* at 268. The court also noted that the expert's testimony "if admissible, would be helpful to determining damages only if all defendants were found *jointly and severally liable* on every cause of action alleged." *Id.* at 268 (emphasis added).

11

sale of competitive products in prohibited territories." *Id.* at ¶ 194; *see also id.* at ¶ 145 ("After the end of his relationship with Globus, Walker provided Gregory with information about one of his restricted surgeons to support her efforts to sell SeaSpine products to the same surgeon."); *Id.* at ¶ 140 ("Van Gilder admitted that, after the end of his relationship with Globus, he provided Gregory with information about one of his Restricted Surgeons to support Gregory's efforts to sell SeaSpine products to the same surgeon.").

Decker's testimony may be unhelpful in the jury's efforts to quantify the individual damages resulting from Defendants' personal breach of their independent NCNDAs. But it is still relevant to establishing the damages Globus allegedly suffered due to Defendants' cooperative effort to interfere with each other's contractual relationship with and duty of loyalty to Globus.[4] Therefore, Decker's presentation of Globus's damages without apportioning those damages between defendants does not render her testimony excludable.

3. *Decker's decision to calculate damages at the facility level does not render her testimony speculative or unreliable.*

Defendants argue that Decker's testimony is "speculative and unreliable" and "would not aid the trier of fact in assessing the effect of the alleged anticompetitive activity" because she calculated Globus's damages by medical facility, not by surgeon. ECF No. 193 at 20. Echoing their later causation argument, Defendants argue that calculating damages at this level fails to consider factors that contributed to Globus's alleged lost profits apart from Defendants' alleged wrongdoing, such as the fact that one surgeon and Globus customer left Virginia to practice elsewhere during the period covered by Decker's testimony and another never purchased SeaSpine products after his assigned Sales Rep Defendant left Globus. ECF No. 193 at 20; ECF No. 222 at

---

[4] At trial, if necessary, a cautionary instruction may be provided to ensure that the jury does not consider the aggregated damages amount when calculating damages for Globus's breach of contract claim.

12

13. In constructing this "'but-for world' that ignored crucial surgeon-specific sales data," Defendants contend, Decker merely speculated in reaching her conclusions. ECF No 222 at 14.

Globus argues that Decker's decision to calculate the damages at the facility level reflects the fact that the NCNDAs prohibited the sales rep defendants from engaging in any competitive activity with hospitals, not just surgeons. ECF No. 220 at 17. Globus also argues that Defendants "do not point to any actual methodological flaws with this approach, nor do they provide any concrete explanation for why using hospital facility-level data is unreasonable or unjustifiable." ECF No 220 at 18.

Here, "[t]he standard for exclusion is whether [the expert speculates] 'in fashions unsupported by . . . the uncontroverted evidence in the case.'" *BAE Sys. Norfolk Ship Repair, Inc. v. United States*, No. 2:22cv230, 2024 WL 1057773, at *4 (E.D. Va. Feb. 23, 2024) (quoting *Newman v. Hy-Way Heat Sys., Inc.*, 789 F.2d 269, 270 (4th Cir. 1986)). Perceived flaws in the factual basis of the expert's report and testimony go to the weight, not the admissibility, of that testimony. *Compare Bresler v. Wilmington Trust Co.*, 855 F.3d 178, 195–96 (4th Cir. 2017) (holding that disagreements over the value an expert assigned certain variables in calculating damages was not grounds to exclude) ("'[Q]uestions regarding the factual underpinnings of the expert witness' opinion affect the weight and credibility' of the witness' assessment, 'not its admissibility.'") (quoting *Structural Polymer Grp. v. Zoltek Corp.*, 543 F.3d 987, 997 (8th Cir. 2008) *with Tyger Constr. Co. v. Pensacola Constr. Co.*, 29 F.3d 137, 143 (4th Cir. 1994) (holding that an expert's testimony should have been excluded when a central assumption on which he relied contradicted undisputed record evidence).

Decker's testimony arguably may hold less weight due to her use of facility-level data over surgeon-level data. But her failure to consider surgeon-specific factors does not qualify as a blatant

contradiction of the record that would require her testimony to be excluded. Defendants rely on *Pharmanetics, Inc. v. Aventis Pharm., Inc.* in arguing that, because Decker assumed that Defendants' actions were the sole cause of Globus's lost profits, her testimony should be excluded. ECF No. 222 at 13–14; No. 5:03-CV-817-FL(2), 2005 WL 6000369, at *9 (E.D.N.C. May 4, 2005), *aff'd*, 182 F. App'x 267 (4th Cir. 2006). In that case, the court excluded the plaintiff's expert's testimony because his damages model "incorrectly assume[d] that defendant's actions are the cause of *all* of plaintiff's lost sales" when that was "indisputably not the case." *Id.* at *10 (emphasis in original). However, the court noted that "in its own evidence supporting causation and injury plaintiff included summary sales reports" that indicated other causes of lost sales. *Id.* Also important to the court's determination was that, in ruling on a motion for summary judgment, it had already determined that most of the plaintiff's primary claims "no longer remained for a jury to consider." *Id.* at *11. Its summary judgment order recognized that the evidence before the court "does not rule out a finding that defendant's advertisements caused *some* lost . . . sales opportunities," but to assume that all lost sales were caused by the defendant's actionable conduct was, due to record and the court's previous holdings, "unreliable and misleading." *Id.* (emphasis in original).

Decker's report and testimony is not similarly hamstrung by evidence presented by Globus or the record, especially when multiple issues have yet to be decided. Defendants are free to challenge Decker's use of one set of data or variables to the exclusion of another, but because at this juncture such challenge attacks the factual underpinnings of Decker's testimony—facts which have not yet been definitively determined as they were in *Pharmanetics*—they should do so at trial in the form of cross-examination.

    4. *Decker's exclusion of other factors from her analysis does not render her testimony irrelevant.*

Defendants urge the Court to exclude Decker's testimony "because it fails to establish a causal link between its claimed damages and the Defendant's alleged conduct" and "fails to both explain how its claimed damages were caused by the Defendants and to consider other facts in the record that would have impacted its calculations." ECF no 193 at 20–21; *see* ECF No 222 at 18. Defendants highlight seven specific factors that they claim Decker should have considered in her analysis of Globus's lost profits.

First, Defendants argue, the Sales Rep Defendants covered different surgeons after they left Globus, which means that it is not clear that the Sales Rep Defendants unlawfully solicited specific surgeons in violation of their NCNDAs, as the Decker report assumes. ECF No. 193 at 24–25. Second, Globus allegedly suffered reputational harm to its biologics business due to "FDA issues," provider preference, and the impact of contractual pricing arrangements. *Id.* at 26–27. Third, Defendants argue that Globus failed to plan for the termination of the EDA, and if it had planned, it would have mitigated its damages. *Id.* at 27–28. Fourth, Defendants contend excess inventory in hospitals led to a decrease in purchases. *Id.* at 28. Fifth, Defendants argue some surgeons remained Globus customers after the Sales Rep Defendants left Globus. *Id.* Sixth, Defendants contend that Globus's profits suffered from an "inability to meet pricing needs and a lack of breadth of Globus product offerings." *Id.* Seventh and finally, Defendants argue Globus lost the business of one surgeon because the surgeon stopped practicing in Virginia. *Id.* In short, Defendants argue that Decker's failure to consider these potential factors means that she failed to establish a causal connection between the alleged wrongful acts, and therefore her testimony is irrelevant and should be excluded.

In response, Globus argues that Decker, as a damages expert, need not establish causation for her testimony to be relevant. ECF No. 220 at 19. It argues that even if she is required to

establish causation, her testimony sufficiently does so because "economic remedy theory only requires one to establish that damages are linked to the alleged wrongful act with reasonable certainty." *Id.* at 20. *See Helpin v. Trustees of Univ. of Pennsylvania*, 10 A.3d 267, 270 (Pa. 2010) (explaining that breach-of-contract damages must be proven with reasonable certainty); *Rossi v. Schlarbaum*, No. 07-3792, 2009 WL 722297, at *2 (E.D. Pa. 2009) (recognizing that damages stemming from lost profits caused by an alleged tortious interference with contractual relations must be proven with reasonable certainty under Pennsylvania law) (citing *Brisbin v. Superior Valve Co.*, 398 F.3d 279, 289 (3d Cir. 2005).

Globus retained Decker to "evaluate and render opinions regarding the economic remedies due Globus, if any" and she was instructed to "assume liability but express no opinions on such." ECF No 194 at 4. A damages expert's report may be excluded due to a failure to establish causation when that testimony is based on faulty assumptions that are directly disputed by the evidence, or when the court concludes that there is "simply too great an analytical gap between the data and the opinion proffered." *Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 146, (1997); *See Tyger Const. Co. Inc.*, 29 F.3d at 143 (reversing the district court's decision to admit expert testimony when the expert based calculations on an assumption that directly contradicted the record and was therefore a "faulty assumption that is unsupported by the evidence" that stretched the causal link between damages and wrongful acts too far). Defendants cite several cases in which expert testimony was dismissed for failing to establish a sufficient connection between alleged wrongdoing and damages. ECF No. 193 at 21–22. *Concordia Pharms., Inc. v. Method Pharms., LLC*, No. 3:14CV00016, 2016 WL 1464639, at *6 (W.D. Va. Apr. 13, 2016); *Pharmanetics, Inc.*, 2005 WL 6000369, at *12; *Sigur v. Emerson Process Mgmt.*, 492 F. Supp. 2d 565, 567 (M.D. La. 2007).

These cases offer examples of an extreme disconnect between the facts of the case and assumptions made by experts preparing testimony. In *Concordia*, the plaintiff's expert testified that sales of a specific drug would have been higher but for Defendant's listing of a potentially competitive drug in pharmaceutical databases. *Concordia Pharms., Inc.*, 2016 WL 1464639, at *5. The Court excluded the expert's testimony because it failed to consider major market factors that affected the sales of plaintiff's drug. *Id.* at *6. For example, the expert concluded that the drug's prescription volume was usually not affected by price increases, but only analyzed two out of three historical price increases that could have affected demand for the drug. *Id.* He also failed to consider that the drug was de-listed from several health plan formularies. *Id.* Therefore, the court held that the testimony must be excluded because the proponent of the expert testimony failed to meet the burden of proving the testimony's reliability and relevance. *Id.* at *7. Similarly, in *Sigur*, the excluded expert based his conclusions on facts that were explicitly refuted by record evidence that the proponent of the expert testimony was unable to rebut. 492 F. Supp. 2d at 569–70.

In *Pharmanetics*, the Court found that the expert's damages model was too speculative for several reasons. *Pharmanetics, Inc.*, 2005 WL 6000369, at *13. First, the expert's damages model assumed that the defendant was liable for the actions alleged in all of the plaintiff's causes of action. *Id.* at *10–*11. The Court found that this assumption was "no longer viable at this stage of the case" because the court had already determined that "most of plaintiff's primary claims no longer remain for a jury to consider." *Id.* at *10. Therefore, as the expert's "damages model is premised upon plaintiff's success on all of its causes of action, and does not allow, even in the alternative, for an adjustment of damages to account for those claims no longer remaining, it is not a reliable measure of damages." *Id.* Second, the expert's damages model assumed that the

17

defendant's actions were the cause of all the plaintiff's lost sales "rather than only those lost sales which are reasonably inferred from the evidence of record." *Id.* at *10–*11, *16. This rendered the testimony unreliable and misleading because even undisputed evidence proffered by the plaintiff showed that other factors contributed significantly to the drop in sales. *Id.* at *11. Third and finally, the court found that the expert's testimony was inadmissible because it failed to consider four significant factors in determining lost profits, rendering it speculative. *Id.* at *12–*13.

At this stage of litigation, when Globus's claims against Defendants are still pending, Decker's testimony does not exhibit the same fundamental errors that the testimony at issue in these cases did. *See Controls Southeast Inc. v. QMax Industries*, No. 3:21-CV-302, 2024 WL 2160845, at *2 (W.D.N.C. May 14, 2024). In *Controls Southeast*, the defendants attempted to exclude the plaintiff's expert's testimony because "he fail[ed] to establish a causal link between his damages calculations and Defendant's alleged wrongdoing." *Id.* The Court noted that the expert was permitted to assume that "the jury accepts plaintiff's contention that the parties are direct competitors in a two-supplier market," and therefore, the expert's analysis was "causally related to the alleged harm." *Id.* Because there was "at the very least, a genuine dispute over whether the parties are direct competitors in a two-supplier market," the court denied the defendants' motion to exclude. *Id.*

Globus and Defendants present arguments related to causation in their pending cross motions for summary judgment. *See* ECF No. 213 at 25 ("Without proof that alleged misconduct caused a resultant injury, Globus has no claim for breach of contract."); ECF No. 226 at 24 ("[I]t is beyond dispute that Globus is entitled to lost profits attributed to Schools's competitive sales to Dr. Babington."). Unlike in the cases Defendants cite, the factual issues regarding causation have

yet to be fully established in this case. Therefore, in ruling on Defendants' *Daubert* motion, this Court declines to make findings on issues related to the cause of any of Globus's alleged lost profits.

"Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *Daubert*, 509 U.S. at 596. Therefore, Defendants should challenge Decker's testimony using these traditional methods at trial.

## IV. CONCLUSION

Globus met its burden to prove that Decker's testimony is reliable and relevant to at least some of its claims against Defendants. Therefore, Defendants' Motion to Exclude, ECF No. 192, is **DENIED**.

The Clerk is **DIRECTED** to forward this Order to all counsel of record.

It is so **ORDERED**.

/S/
Lawrence R. Leonard
United States Magistrate Judge

Norfolk, Virginia
November 7, 2024